IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MELONIE RAE GARCIA MARQUEZ,

      Plaintiff,

v.                                                                                Civ. No. 22-187 GBW

KILOLO KIJAKAZI, *Acting*
*Commissioner of the Social Security*
*Administration*,

      Defendant.

## ORDER DENYING REMAND

      This matter comes before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, With Supporting Memorandum. *Doc. 30.* For the reasons explained below, the Court DENIES Plaintiff's Motion and AFFIRMS the judgment of the SSA.

### I.    PROCEDURAL HISTORY

      Plaintiff filed an initial protective application for SSDI and SSI on July 18, 2019, alleging disability beginning May 9, 2019. Administrative Record ("AR") at 282, 289. Plaintiff's application was denied on initial review on October 7, 2019, AR at 187, 191, and again on reconsideration on August 13, 2020, AR at 134, 136. On January 31, 2020, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 31-63. The ALJ issued an unfavorable decision on July 29, 2021. *See* AR at 24. Plaintiff sought review

from the Appeals Council, which denied review on January 14, 2022, AR at 1, making

the ALJ's denial the Commissioner's final decision, *see* 20 C.F.R. §§ 404.981, 422.210(a).

On March 14, 2022, Plaintiff filed suit in this Court, seeking review and reversal

of the ALJ's decision. *See doc. 1*. Plaintiff filed her Motion to Reverse and Remand for

Rehearing, With Supporting Memorandum on December 2, 2022. *Doc. 30*. The

Commissioner responded on March 2, 2023. *See doc. 33*. Briefing on Plaintiff's Motion

was complete on March 23, 2023, *see doc. 37*, after Plaintiff filed her reply, *doc. 36*.

## II.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*,

933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court]

neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks

omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.2d at 800 (internal quotation marks omitted). "The record must

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to

discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Indeed, the substantial evidence standard is met unless the evidence on which the ALJ relied is "overwhelmed by other evidence in the record or constitutes mere conclusion." *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).

## III.   ALJ Evaluation

### A.  Legal Standard

For purposes of Supplemental Security Income and Social Security Disability Insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1] If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id.* § 404.1520(a)(4).

---

[1] Plaintiff has applied for both SSI and SSDI. The five-step test for determining disability and other

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

---

relevant regulations are the same for both benefits but are codified in two separate parts of the Code of Federal Regulations. *See* 20 C.F.R §§ 404.1520, 416.920. Part 404 of Title 20 of the Code of Federal Regulations governs SSDI, while Part 416 governs SSI. In the interests of efficiency and judicial economy, the Court only cites to applicable regulations in Part 404 of Title 20 of the Code of Federal Regulations in this Order, but the analogous regulations in Part 416 also apply.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process.  At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## B.  The ALJ's Decision

On July 29, 2021, the ALJ issued his decision denying Plaintiff's application for SSDI and SSI benefits.  *See* AR at 24.  In denying Plaintiff's application, the ALJ applied the five-step sequential analysis.  At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since May 10, 2019, the alleged onset date."  AR at 14.  At step two, he found that Plaintiff has the following severe impairments: "degenerative disc disease (DDD) of the lumbar spine/scoliosis; migraine/tension headaches; asthma; obesity; bipolar II disorder; major depressive disorder; post-traumatic stress disorder (PTSD); and anxiety disorder."  AR at 15.  He also noted that Plaintiff has a variety of other medically determinable impairments, *see id.*, but the ALJ found these impairments to be non-severe.  At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment in the Listings.  *Id.*

At step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b).  AR at 17.  The ALJ also found that Plaintiff is limited to

occasionally climbing ramps and stairs, never climbing ladders, ropes, or scaffolds, and occasionally balancing, stooping, kneeling, crouching and crawling.  The Plaintiff is limited to no more than occasional exposure to dust, odors, fumes, pulmonary irritants and no exposure to unprotected heights or moving mechanical parts.  *Id.*  The ALJ also included several mental limitations in Plaintiff's RFC including "understanding, remembering, and carrying out simple, routine, repetitive tasks, but not at a production rate pace (e.g. assembly line), making simple work-related decisions, dealing with changes consistent with a routine, repetitive work setting, maintaining concentration, persistence, and pace for at least two hour intervals, occasional superficial interactions with supervisors and co-workers, but less than occasional (but more than none) superficial interactions with the general public."  *Id.*

In making these findings, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and the other evidence in the record.  AR at 20.  The ALJ reviewed Plaintiff's medical record and found the Disability Determination Services (DDS) examiner physical health opinions of Drs. Brady and Bocian somewhat persuasive, the DDS examiner mental health opinions of Drs. Walker and Padilla persuasive, the opinion of Dr. Lichtle partially persuasive, and the opinion of Nurse Practitioner (N.P.) Marzec not

persuasive.  AR at 21.

## IV.   ANALYSIS

Plaintiff moves the Court to reverse or remand the ALJ's decision based on four main arguments: (1) The ALJ's findings related to Plaintiff's back pain, migraines, and other reported symptoms are not supported by substantial evidence, *doc. 30* at 5-9, 19-21; (2) the ALJ improperly assessed the medical opinions of N.P. Marzec and Dr. Lichtle, *id.* at 9-17; (3) the ALJ failed to consider lay evidence from Plaintiff's husband, *id.* at 17-19; and (4) the ALJ erred at step five when he failed to address a discrepancy between Plaintiff's limitations as given in the RFC and the requirements of the jobs provided by the vocational expert during her testimony, *id.* at 22-24.  Defendant disputes each of these arguments.  *See generally doc. 33*.  For the reasons explained below, the Court agrees with Defendant.

### A.   The ALJ's Findings Regarding Plaintiff's Back Pain, Migraines, and Other Reported Symptoms are Supported by Substantial Evidence

Plaintiff argues that the ALJ improperly evaluated the evidence relating to Plaintiff's back pain, migraines, and other reported symptoms when he formulated Plaintiff's RFC.  *See doc. 30* at 5-9, 19-21.  However, the ALJ clearly considered all of the evidence, he supported his findings with an explanation of the evidence upon which he relied, and none of this evidence is "overwhelmed by other evidence in the record."

*Grogan*, 399 F.3d at 1261-62 (citations omitted).  As a result, the Court finds that the ALJs' findings are supported by substantial evidence.

      *i.*     *Back Pain*

Plaintiff argues that the ALJ's assessment of Plaintiff's back pain was "cursory" and that the medical evidence which showed "worsening back pain," "tenderness of her lower back," and pain, *doc. 30* at 6 (citing AR at 420-21, 594, 609), as well as Plaintiff's reports to her physical therapist and during the hearing that her pain increases during prolonged sitting, standing, and walking, *id.* at 6-7 (citing AR at 52-53, 562, 885), support greater limitations in the RFC.

The Court disagrees that the ALJ's discussion of Plaintiff's back pain was cursory.  The ALJ noted Plaintiff's reported problems related to her back pain.  AR at 18 ("[Plaintiff] stated that she could not lift the patient [for a previous caregiver job] due to issues with her back"; "[Plaintiff] believes she can sit about 20 minutes and stand no more than five minutes").  The ALJ also discussed the medical history of Plaintiff's back pain.  AR at 19 ("X-ray of the lumbar spine on August 31, 2018 showed slight scoliosis and tiny osteophytes"; "[Plaintiff] complained of worsening back pain for two years").  However, the ALJ concluded that Plaintiff's reported symptoms related to her back pain were not supported by the medical evidence because the Plaintiff has had multiple normal test results or test results showing only minimal damage in her back, and

because Plaintiff's pain complaints have decreased following physical therapy. *See* AR at 420-422, 652, 659, 890, 896.

The Court is unable to find other medical evidence related to Plaintiff's back pain, either in the evidence cited in Plaintiff's Motion or in the Court's own review of the record, that overwhelms the evidence cited by the ALJ, and the Court can clearly follow the ALJ's logic regarding his conclusion that Plaintiff's subjective symptoms of back pain are not supported by the medical evidence. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). As a result, the Court does not find that the ALJ erred by not including stricter limitations related to Plaintiff's back pain in the RFC.

    *ii.*    *Migraines*

Next, Plaintiff argues that the ALJ "ignore[d] the longitudinal and consistent evidence of [Plaintiff's] migraines" and that the RFC did not account for limitations regarding Plaintiff's inability to tolerate light exposure during her migraines or her need to miss work due to the migraines. *Doc. 30* at 7-9. Most of the evidence to which Plaintiff cites is either self-reported symptoms or symptoms reported by Plaintiff's husband. *Id*. at 8 (citing the hearing testimony (AR at 50-51), Plaintiff's husband's function report (AR at 353), Plaintiff's headache questionnaire (AR at 361)). The ALJ considered Plaintiff's reported migraines in his opinion. AR at 18 ("[Plaintiff] reported migraines"); AR at 20 ("[Plaintiff] testified to debilitating headaches"). However, the ALJ concluded that Plaintiff's testimony of the severity of her migraines was not

supported by the medical evidence which showed that Botox treatments provide

Plaintiff significant relief from her headaches, AR at 554, 580, 976, and that Plaintiff

stopped reporting headaches during medical appointments in May and June of 2019,

AR at 404, 409, 420-22.  The Court does not find that Plaintiff's self-reported symptoms

of migraines overwhelm the medical evidence on which the ALJ relied, and the Court

will not second guess the ALJ's weighing of the medical and symptom evidence.

*Bowman*, 511 F.3d at 1272.

      *iii.*     *Other Reported Symptoms*

Lastly, Plaintiff argues that the ALJ's overall assessment of Plaintiff's reported

symptoms was flawed because (1) the ALJ over-relied on Plaintiff's "limited instances

of activity," such as performing household tasks and discounted Plaintiff's other

symptoms; and (2) the ALJ failed to acknowledge Plaintiff's long-term and repeated

attempts to seek treatment for her ongoing "back pain, migraines, PTSD, Bipolar II

disorder, anxiety[,] and depression."  *Doc. 30* at 20-21.  Plaintiff contends that a proper

consideration of Plaintiff's history of reported symptoms would have led to a more

restrictive RFC.  *Id.* at 21.

Because the ALJ's assessment of Plaintiff's ability to do daily activities was only

one part of his evaluation of Plaintiff's symptom testimony and the overall medical

evidence, the Court does not find that the ALJ erred in assessing Plaintiff's symptom

testimony.  Although "limited [daily] activities in themselves do not establish that one

can engage in light or sedentary work activity . . . such activities may be considered, along with medical testimony, in determining whether a person is entitled to disability benefits." *Talbot v. Heckler*, 814 F.2d 1456, 1462 (10th Cir. 1987). *See also Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 2993) (finding that the ALJ's determination was not supported by substantial evidence because the evidence of the claimant's "minimal daily activities" was not enough to support a not disabled finding and the medical evidence which showed a normal CT scan, normal myelogram, and lack of a herniated disc was undermined by the claimant's doctor's belief that the claimant was still in pain and his decision to change the claimant's diagnosis). The ALJ determined that Plaintiff is able to "prepare meals, clean, do laundry, garden, drive, use public transportation, shop in stores and handle financial affairs" despite her physical and mental impairments, but he also conducted an analysis of Plaintiff's medical record and determined that her back pain, migraines, and mental health conditions do not completely preclude her from all work. *See supra* Section IV(A)(i) and (ii) (discussion of the ALJ's analysis of Plaintiff's back pain and migraines); *see also* AR at 18 (ALJ's discussion of Plaintiff's reported mental health symptoms and the treatment she receives for these conditions); AR at 21 (ALJ's evaluation of Plaintiff's mental abilities

based on medical evidence).  The ALJ thus did not commit a legal error by relying

solely on Plaintiff's ability to do limited daily activities.

The Court also finds that the ALJ did not fail to account for Plaintiff's long-term

medical history of seeking treatment for her various physical and mental conditions.

When an ALJ assesses a claimant's symptoms, the ALJ will consider "attempts to seek

medical treatment for symptoms and to follow treatment once it is prescribed."  SSR 16-

3P, 2017 WL 5180304, at *9 (Oct. 25, 2017).  "Persistent attempts to obtain relief of

symptoms, such as increasing dosages and changing medications, trying a variety of

treatments, referrals to specialists, or changing treatment sources may be an indication

that an individual's symptoms are . . . intense and persistent."  *Id.*  While it is true that

Plaintiff has sought extensive treatment for her various physical and mental conditions

for many years, Plaintiff has also experienced improvements based on her treatments.

*See, e.g.,* AR at 976 (noting 80% improvement of migraines from Botox treatment); AR at

886, 896 (reduction of lower back and neck pain from 6-7 out of 10 to 2-4 out of 10 with

physical therapy); AR at 50 (Plaintiff's testimony stating that walking for 20-25 minutes

in the park reduces her anxiety a depression); AR at 776 (notes from Plaintiff's

counseling session indicating that medication has improved Plaintiff's moods). The

ALJ's conclusion that the "longitudinal medical evidence" of Plaintiff's severe physical

impairments did not preclude all substantial gainful activity is thus supported by substantial evidence.

**B.**     **The ALJ's Assessments of the Medical Opinions of N.P. Marzec and Dr. Lichtle are Supported by Substantial Evidence**

Under 20 CFR § 404.1520c, an ALJ must "articulate . . . how persuasive [he] find[s] all of the medical opinions" in the record.  The persuasiveness of a medical source's opinions depends on five factors: "supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'"  *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. 2021) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)). Supportability and consistency are the only two factors that the ALJ must explain when assessing the persuasiveness of a medical source's opinions, although the ALJ should also consider the medical provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical provider directly examined the claimant.  *See* 20 C.F.R. § 404.1520c(b)(2), (c).

When explaining his findings regarding persuasiveness of a medical source's opinions under § 404.1520c(b), the ALJ must provide enough detail such that the Court "can follow the adjudicator's reasoning" and determine whether the "correct legal standards have been applied."  *Keyes-Zachary*, 695 F.3d at 1166; *see also Langley v.*

*Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (finding that an ALJ's reasons for rejecting a medical opinion must be "'sufficiently specific' to enable [the] court to meaningfully review his findings" (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003))).

     *i.*     *N.P. Marzec*

Plaintiff argues that the ALJ's assessment of the persuasiveness of N.P. Marzec's medical opinion fails to provide "any reviewable findings" and is thus insufficient under the law. *Doc. 30* at 11. The Court agrees with Plaintiff that the ALJ did not conduct a thorough stand-alone evaluation of N.P. Marzec's opinion.[2] However, N.P. Marzec's opinion relates to the same mental limitations that the ALJ already evaluated when he discussed the opinions of Drs. Walker, Padilla, and Lichtle. In these evaluations, the ALJ found that the objective medical evidence supports moderate limitations in each of the mental limitation categories. The Court understands the ALJ to have relied on the same objective medical evidence in his finding that N.P. Marzec's assessment of all marked limitations was unpersuasive. The ALJ was not required to repeat that evidence in his discussion of N.P. Marzec's opinion. *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished) ("The ALJ set forth a summary of the

---

[2] The Court also agrees with Plaintiff that the use of the word "understatement" in the ALJ's assessment of N.P. Marzec's opinion is confusing. *See* AR at 21. Based on the remainder of the analysis, however, the Court determines that the ALJ meant to write "overstatement."

relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [the doctor's] opinion.").

Plaintiff also argues that the ALJ committed legal error when he neglected to evaluate the mental health medical records from El Pueblo Health Services. *Doc. 30* at 12-13. Although the ALJ must discuss "significantly probative evidence he rejects," *Clifton*, 79 F. 3d at 1010, "[t]here is obviously no requirement that the ALJ reference everything in the administrative record," *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010). The mental health medical records from El Pueblo Health Services document Plaintiff's efforts to receive treatment for bipolar disorder, depression, anxiety, anger, difficulty with sleep, and post-traumatic stress disorder. *See, e.g.*, AR 407, 411, 429, 481-82, 489, 754, 769-70, 782, 792, 906, 911, 925, 935. The ALJ did not cite these exact medical records, but he did discuss Plaintiff's reports of bipolar disorder, depression, difficulty with sleep, anger management therapy, AR at 18, Dr. Lichtle's diagnosis of depression and PTSD, AR at 19, and Dr. Padilla's consultative examination of Plaintiff in which she assessed Plaintiff's mental condition, AR at 21. In addition, Dr. Padilla's medical opinion specifically references several of the medical records from El Pueblo Health Services. AR at 176. Because Plaintiff fails to provide any argument for how the El Pueblo Health Services records would meaningfully change the ALJ's analysis of Plaintiff's mental limitations, and the ALJ clearly analyzed evidence related to Plaintiff's

mental health, the Court does not find that the ALJ erred in omitting explicit reference
to these particular medical records in his analysis.

     *ii.*     *Dr. Lichtle*

     Plaintiff argues that the ALJ's assessment of Dr. Lichtle's medical opinion is
confusing and does not present reviewable findings. *Doc. 30* at 13-15. In a similar vein,
Plaintiff argues that the ALJ should not have rejected Dr. Lichtle's finding that Plaintiff
has a marked limitation in interacting with others. *Id.* at 16-17. The Court reads the
ALJ's assessment to mean that he found persuasive Dr. Lichtle's findings with respect
to Plaintiff's moderate limitations in (1) understanding, remembering, or applying
information; (2) concentrating, persisting, or maintaining pace; and (3) adapting or
managing herself. AR at 21. However, the ALJ was not persuaded by Dr. Lichtle's
finding that Plaintiff has a marked limitation in interacting with others because
although Plaintiff "noted inability to get along with coworkers," she also attends church
on Sundays, has worked in the past as a caregiver for an elderly woman, and her eye
contact and answers to questions were appropriate during the consultative
examination. AR at 21. The ALJ's reasons for finding Dr. Lichtle's opinion partially
persuasive are supported by substantial evidence, and the Court will not reweigh the
evidence related to Plaintiff's ability to interact with others. *Bowman*, 511 F.3d at 1272.

     Plaintiff next argues that the ALJ erred because he found Plaintiff to have a
moderate limitation in concentrating, persisting, or maintaining pace, but he only

limited Plaintiff's RFC to maintaining concentration, persistence, and pace for at least

two-hour intervals. *Doc. 30* at 15. Plaintiff contends that because maintaining

concentration for two hours is a requirement of any job, POMS 25020.010(B)(2)(a), the

ALJ's RFC finding with respect to concentration is not a true limitation and does not

reflect Plaintiff's moderate limitation in this area. However, if the Court were to accept

Plaintiff's argument, a finding of a moderate limitation in concentration, persistence,

and pace would always mean that the claimant was unable to meet the basic

requirements for any job which would automatically result in a disability finding. This

result does not comport with the law which requires at least one extreme or two

marked limitations for a disability finding. 20 C.F.R. Subpt. P. App. 1, § 12.00(A)(2)(b).

Finally, Plaintiff argues that the ALJ erred when he failed to include Dr. Lichtle's

finding that Plaintiff has a moderate to marked limitation in the ability to use public

transportation in Plaintiff's RFC. *Doc. 30* at 14. First, the Court notes that use of public

transportation is not one of the functional criteria that the ALJ must assess for a mental

condition listing, and thus there was no requirement that the ALJ evaluate this portion

of Dr. Lichtle's opinion. *Id.* Second, the ALJ partially relied on Plaintiff's use of public

transportation when he declined to adopt Dr. Lichtle's finding that Plaintiff has a

marked limitation in interacting with others. Plaintiff argues that the ALJ misconstrued

this evidence because Plaintiff took a state-provided medical transport vehicle to the

examination and not a public bus. While the Court agrees that a medical transport

vehicle is not the same kind of public transportation as a public bus, a medical transport vehicle would still require that Plaintiff interact with at least one or more members of the public while arranging and taking the ride.  In addition, the ALJ relied on additional evidence, including Plaintiff's interaction with medical professionals, interaction with clients in her previous job, and interaction with others at church to make his finding that Plaintiff has a moderate limitation in interacting with others.  As before, the Court will not second guess the ALJ's weighing of this evidence.  *Bowman*, 511 F.3d at 1272.

### C.      The ALJ Did Not Err in His Assessment of the Lay Evidence

Plaintiff argues that when determining the RFC, the ALJ did not properly consider the lay evidence from a function report written by Plaintiff's husband.  *Doc. 30* at 17-19.  Although the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," *Clifton*, 79 F.3d at 1009, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources" under the persuasiveness framework for assessing medical opinions found in 20 C.F.R. § 404.1520c(d).

In his determination, the ALJ clearly considered the lay evidence from Plaintiff's husband because the ALJ provided a description of some the statements in the function report, *see* AR at 18, and, despite no requirement to do so, assessed the persuasiveness of the function report.  AR at 22 (finding that Plaintiff's husband is not a disinterested third party and that his statements "are simply not consistent with the preponderance

of the opinions and observations by medical doctors in this case"). The ALJ's

consideration of the function report is sufficient under the law, including the case law

cited by Plaintiff. *See Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006) (finding that

the ALJ erred because he failed to consider lay testimony when he "made no mention of

[lay] testimony, nor did he refer to the substance of [the] testimony anywhere in the

written decision."). To the extent that Plaintiff argues that the Court should have

assigned more weight to the statements about Plaintiff's health made in the function

report, the Court will not second guess the ALJ's evaluation of the evidence. *Bowman*,

511 F.3d at 1272.

### D. The ALJ Did Not Err During the Step Five Analysis

Lastly, Plaintiff argues that the ALJ erred at step five when he improperly failed

to address a discrepancy between the limitations he included in Plaintiff's RFC and the

mental capacity requirements of two of the jobs provided by the vocational expert. *Doc.

30* at 23. In particular, Plaintiff argues that the ALJ's determination that Plaintiff can

only perform "simple, routine, repetitive tasks," AR at 17, is inconsistent with the Level

2 reasoning requirement of garment sorter and laundry classifier, *doc. 30* at 23; *see also*

Dictionary of Occupational Tables ("DOT") 222.687-014 (describing garment sorter as

requiring Level 2 reasoning as defined in Appendix C of the DOT); DOT 361.687-014

(describing laundry classifier as requiring Level 2 reasoning as defined in Appendix C

of the DOT).  As a result, Plaintiff argues that the vocational expert should have found

that Plaintiff was only able to perform the job of presser.  *Id*. at 24.

Contrary to Plaintiff's contentions, the Court does not find that jobs that require

Level 2 reasoning are inconsistent with Plaintiff's RFC limitation that she complete only

simple and routine tasks.  The Tenth Circuit has found that jobs that require Level Two

Reasoning "appear[] more consistent" with an RFC that limits a claimant to "simple and

routine work tasks" than jobs that require Level 3 reasoning.  *Hackett v. Barnhart*, 395

F.3d 1168, 1176 (10th Cir. 2005); *see also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir.

2008) (unpublished) (rejecting an argument that the ALJ's limitation to simple,

repetitive, and routine work was inconsistent with jobs that required Level 2 reasoning).

Indeed, the requirements of Level 2 reasoning which include "[a]pply[ing] *commonsense*

understanding to carry out detailed but *uninvolved* written or oral instructions[] and

[d]eal[ing] with problems involving a *few* concrete variables in or from *standardized*

situations[3]," are consistent with simple, routine, and repetitive tasks.

V.   CONCLUSION

For the foregoing reasons, the Court finds no reversible error in the ALJ's

decision.  Therefore, the Court DENIES Plaintiff's Motion to Reverse and Remand (*doc.

18*) and AFFIRMS the judgment of the SSA.

---

[3] *See* DOT, App'x C, "02 Level Reasoning Development,"
  https://occupationalinfo.org/appendxc_1.html#III (last accessed Sept. 18, 2023) (emphasis added).

**IT IS SO ORDERED.**

_____

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**